UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MILLENIA PRODUCTIONS, LLC,<br>a Kansas Limited Liability Company;<br><br>Plaintiff,<br><br>vs.<br><br>POSH BEAUTY CARE LLC and POSH BEAUTY DISTRIBUTOR LLC;<br><br>Defendants. | Case No.<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND INJUNCTIVE RELIEF

Plaintiff Millenia Productions, LLC ("Millenia"), by and through its undersigned counsel, states and alleges as follows its Verified Complaint against Defendants Posh Beauty Care LLC and Posh Beauty Distributor LLC (collectively "Posh" or "Posh Defendants"):

## PARTIES

1. Millenia is a Kansas Limited Liability Company with its principal place of business at 3819 N. Toben Street, Wichita, Kansas 67226. All members of Millenia are individuals domiciled in and citizens of the State of Kansas. Millenia is a leading manufacturer and distributor cosmetics, including, but not limited to, manicure and pedicure products and nail care kits as well as the separate ingredients that comprise the kits. These kits contain packets that correspond to a "step" in the manicure process so that the soaks, scrubs, lotions, and other materials in the kit can be applied to the salon patron in sequence. An image showing an example of Plaintiff's COLLAGENSPA pedicure kit is provided below, along with the packets that are provided in the kit.




2. The Posh Defendants have a similar product:







3. At issue in this case are Millenia's HURRICANE® and COLLAGENSPA® foot care kit products. Both marks are registered with the U.S. Trademark Office.

4. Registration # 8,393,481 (a "standard character mark" for HURRICANE) was filed on May 13, 2024 and was registered on August 11, 2026. (As presented on the U.S. Trademark Certificate, Exhibit 1). As further discussed below, the Posh Defendants also sell a pedicure kit named HURRICANE. However, pursuant 15 U.S.C. § 1057(c), the Millenia

mark has a constructive first use date identical to its filing date, and after careful research, Millenia has determined that the Posh Defendant's HURRICANE was not in use until sometime during the summer of 2025, more than a year after Millenia's constructive use date for HURRICANE.

5. There are two COLLEGENSPA registrations owned by Millenia. COLLAGENSPA, 5,759,575 (Supplemental Register)(Exhibit 2) and #7,954,618. (Exhibit 3). The stylized version of COLLAGENSPA is presented below (as presented on U.S. Trademark Certificates Exhibit 2 and 3):

COLLAGEN**SPA**

6. **Posh Beauty Care LLC** is a Texas Limited Liability Company with its principal place of business at 1409 S. Jupiter Road, Garland, Texas 75402.

7. **Posh Beauty Distributor LLC** is a Texas Limited Liability Company with its principal place of business at 1409 S. Jupiter Road, Garland, Texas 75042.

8. Wichita Nail Supply ("WNS"), a Kansas business entity operating in Wichita, Kansas, sells salon products manufactured by both Plaintiff Millenia and the Posh Defendants. WNS carries substantial commercial inventory of infringing Posh products at its retail and wholesale facility in Wichita, Kansas, and regularly offers and sells such Posh products within this District, as demonstrated by the documented transaction attached and discussed in greater detail at **Exhibits 4 and 5** below. WNS, at this time, is not a Party to this action, but will be an important

source of documentation for the Posh Defendants' distribution of infringing products on a national scale.

## I. JURISDICTION AND VENUE

### A. SUBJECT MATTER JURISDICTION

9. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claims arise under the Trademark Act of 1946 (Lanham Act), 15 U.S.C. § 1051 *et seq*.

Specifically, this action arises under:

(a) 15 U.S.C. § 1114 (Lanham Act § 32) for federal trademark infringement resulting from Defendants' unauthorized commercial use in commerce of reproductions, counterfeits, copies, or colorable imitations of Plaintiff's registered trademark(s);

(b) 15 U.S.C. § 1125(a)(1)(A) (Lanham Act § 43(a)) for common law trademark infringement, trade dress infringement, false designation of origin, and unfair competition resulting from Defendants' unauthorized copying of Plaintiff's distinctive packaging, product design, and trade dress; and

(c) 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)) for false advertising and false representations of geographic origin resulting from Defendants' deceptive use—on information and belief—of unqualified "Made in USA" designations, domestic origin claims, and American symbolism on products manufactured, assembled, or sourced in substantial part outside the United States, utilizing FTC regulations (16 C.F.R. Part 323) as instructive standards of commercial deceptiveness.

10. This Court has supplemental jurisdiction over any related state law or common law claims—including statutory consumer protection and common law unfair trade practices—pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1338(b) whether arising out of trademark, trade dress, or "Made in U.S.A." misrepresentations, as those claims are so related to the federal Lanham Act claims as to form part of the same case or controversy under Article III of the United States Constitution. These sales demonstrate that there are infringing, and tortious acts that are ongoing in this District and that Plaintiff Millenia is being harmed in this District. This harm occurring in Kansas is a result of an intentional plan for virtually national distribution of Posh Defendants' products, or, in the alternative, with knowledge and intent to cause harm to Millenia in its home jurisdiction of Kansas.

**B. PERSONAL JURISDICTION OVER POSH DEFENDANTS**

11. Specific personal jurisdiction exists over the non-resident Posh Defendants pursuant to K.S.A. § 60-308(b) and the Due Process Clause of the Fourteenth Amendment under *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021), *Calder v. Jones*, 465 U.S. 783 (1984), and *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). Specifically:

(i) Purposeful Market Cultivation: The Posh Defendants have knowingly and intentionally designed, established, and utilized a nationwide wholesale distribution network—operating directly and through authorized "Master Distributors"—for the explicit purpose of distributing and selling Posh products across the United States, including within the State of Kansas.

(ii) Physical In-Forum Inventory & Sales: Through this distribution pipeline, the Posh Defendants intentionally funneled commercial case-pack quantities of infringing

products into the District of Kansas, establishing an ongoing commercial inventory at retail and wholesale suppliers in Wichita, Kansas, including WNS. Store receipts dated March 27, 2026 and September 2, 2026 are provided below and attached as Exhibits 4 and 5.


CUSTOMER COPY
Wichita Nail Supply
2350 S. Hillside St.
Wichita, KS
67211 (316)239-1031
ALL SALES ARE FINAL

SALE RECEIPT

Store : Default Store
Transaction Number : 2026/1/4/832
Emp : Tuyen Nguyen
Pos : WinPOS
Transaction Date: 03/27/2026
Time: 1:59 PM

| Product/UPC Serial Number | Qty | Price($) | Total |
|---|---|---|---|
| Posh Hurricane pack 94714692 | 4 | 6.00 | 24.00 |
| Posh Collagen Pedicure Package 234781235 | 6 | 3.00 | 18.00 |
| pumpkin spice 20001 | 1 | 5.00 | 5.00 |
| MKLuxury gel polish mk001 | 2 | 8.00 | 16.00 |
| dappen dish Dd001 | 1 | 1.00 | 1.00 |

Subtotal $64.00
Tax Sales Tax $4.80
TOTAL $68.80

Amount Due $68.80
Amount Tendered $70.00
Cash $68.80
Change $1.20

Total Items Sold : 14.0
Thank you for your business
Ask us about our loyalty program
and our online ordering
#retailmadesimple
powered by retailcloud


CUSTOMER COPY
Wichita Nail Supply
2350 S. Hillside St.
Wichita, KS
67211 (316)239-1031
ALL SALES ARE FINAL

SALE RECEIPT

Store : Default Store
Transaction Number : 2026/1/4/2485
Emp : Tuyen Nguyen
Pos : WinPOS
Transaction Date: 09/02/2026
Time: 3:45 PM

| Product/UPC Serial Number | Qty | Price($) | Total |
|---|---|---|---|
| Posh Collagen Pedicure Package 234781235 | 1 | 3.00 | 3.00 |
| Posh Hurricane pack 94714692 | 2 | 6.00 | 12.00 |

Subtotal $15.00
Tax Sales Tax $1.12
TOTAL $16.13

Amount Due $16.13
Amount Tendered $20.00
Cash $16.13
Change $3.87

Total Items Sold : 3.0
Thank you for your business
Ask us about our loyalty program
and our online ordering
#retailmadesimple
powered by retailcloud

(iii) Intentional Tortious Acts (Infringement & Unfair Competition): The Posh Defendants committed intentional tortious acts of trademark infringement, trade dress infringement, false designation of origin, and unfair competition by manufacturing, marketing, and distributing the infringing "HURRICANE" and "ULTRA COLLAGEN" product lines into commercial channels reaching Kansas.

(iv) On information and belief, the Posh Defendants further committed intentional tortious acts of false advertising and false designation of origin under 15 U.S.C. § 1125(a)(1)(B)

by labeling, packaging, and marketing foreign-sourced or foreign-assembled knock-off products with unqualified "Made in USA" designations and domestic origin symbolism. The Posh Defendants intentionally introduced these deceptively labeled representations directly into the Kansas commercial marketplace, causing confusion and deception among Kansas commercial buyers and consumers.

(v) On information and belief, the Posh Defendants intentionally directed their tortious conduct at the State of Kansas by placing bulk quantities of infringing and deceptively labeled products into distribution channels with the full commercial expectation that they would be stocked, marketed, and offered for sale on retail floors in Wichita, Kansas.

(vi) Actual Knowledge of Kansas Harm: The Posh Defendants possessed actual knowledge that Millenia is a Kansas entity headquartered in Wichita, Kansas, and had specific knowledge of Millenia's senior trademark and trade dress rights following formal written notice issued on October 21, 2024.

(vii) Foreseeable In-State Impact: The Posh Defendants committed these intentional acts knowing and intending that their knock-off products and false "Made in USA" origin claims would directly impact the Kansas market, siphon commercial sales from a Kansas manufacturer, and cause substantial, foreseeable commercial injury to Millenia within this District.

12. As further documented below, on March 27, 2025, an investigator purchased four (4) units of "Posh Hurricane pack" and six (6) units of "Posh Collagen Pedicure Package" directly from WNS's retail facility located at 2350 S. Hillside St., Wichita, KS 67211 (Sales Receipt attached as Exhibit 4). To assure that the sales in Kansas have continued during a substantial period

of time, and that such infringing sales are ongoing, Plaintiff Millenia has purchased additional infringing product at the same location as described above on September 2, 2026. This receipt demonstrates that both "ULTRA COLLAGEN" (Posh's infringing version of COLLAGEN**SPA** and Posh's infringing version of HURRICANE. On information and belief, these items were drawn from a larger commercial stockpile of Posh inventory delivered into this District through Posh's distribution network.

**C. VENUE (28 U.S.C. § 1391)**

13. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district, and a substantial part of the property that is the subject of this action—specifically, infringing products bearing unauthorized trademarks, trade dress, and false designations of geographic origin—has been shipped, stocked, offered for sale, and sold within this District.

14. The District of Kansas possesses a direct, substantial, and compelling interest in adjudicating this dispute, and is the proper and most convenient forum, because:

(a) Plaintiff Millenia is a Kansas entity headquartered in Wichita, Kansas, that has suffered severe commercial, trade dress, and trademark injury within this District, when the Posh Defendants knew, or should have known, that such damage would befall Millenia in Kansas as a result of the Posh Defendants' tortious acts; and

(b) The State of Kansas has a vital interest in providing a forum for local businesses to seek redress for tortious acts and trademark infringement occurring within its borders. Essential physical evidence of localized retail harm, key distributor witness testimony, and evidence of consumer confusion are located squarely within the District of Kansas.

## III. FACTUAL ALLEGATIONS

15. For over 30 years, Millenia has built a respected nationwide reputation in the cosmetic and beauty industry, specializing in high-quality products for professional manicurists, nail salons, and their patrons. Millenia distributes its products primarily through commercial beauty supply distributors, who in turn supply professional salons and manicurists. Salon professionals and end-use consumers recognize and specifically request Millenia's products based on brand reputation, high product quality, and distinctive packaging.

**A. Millenia's Priority in the HURRICANE Mark and Defendants' Infringement:**

16. On May 13, 2024, Millenia filed a federal Intent-to-Use (ITU) trademark application with the United States Patent and Trademark Office (USPTO) for the mark **HURRICANE** (Originally filed as Serial #98-548,407 and registered as U.S. Registration #8,393,481 on August 11, 2026) for "Nail repair and grooming products, namely, moisturizing and softening lotions; socks embedded with moisturizing and softening lotions; paraffin wax for foot and hand care; foot and hand baths and soaks, namely, non-medicated foot bath preparations, non-medicated soaps for foot baths, foot scrubs, foot masks for skin care and non-medicated foot lotions and oils; kits comprising pedicure and manicure products being all of the goods identified above" in International Class 003.

17. Under Section 7(c) of the Lanham Act, 15 U.S.C. § 1057(c), the filing of Millenia's federal trademark application along with the ultimate registration of that trademark on August 11, 2026 constitutes constructive use of the mark, conferring a nationwide right of priority for HURRICANE dating back to May 13, 2024.

18. However, after Millenia's nationwide priority date, Defendants adopted, manufactured, marketed, and distributed an identical mark "**Posh HURRICANE"** for a cheaper manicure footbath preparation. Defendants' infringing activity has continued after the Registration Date of Millenia's HURRICANE mark as of August 11, 2026.

19. Through review of the Posh Defendants' social media, website, and announcements of the initial distribution of the Posh Defendants' HURRICANE, the Posh Defendants did not even try to distribute HURRICANE until the summer of 2025; more than a year after Millenia had established its date for constructive use under 15 U.S.C. § 1057(c) of the Lanham Act.

20. Defendants had constructive notice under 15 U.S.C. § 1072, and subsequent actual notice, of Millenia's senior federal priority rights in the HURRICANE mark. Nevertheless, Defendants intentionally distributed infringing "Posh HURRICANE" inventory into commercial channels reaching Kansas, establishing an ongoing commercial inventory at retail entities in Wichita, Kansas, including WNS.

21. As established by the sales receipt (**Exhibits 4 and 5**) and physical product evidence obtained in Wichita, Kansas, Defendants offered for sale and sold the infringing "Posh HURRICANE" product in direct violation of Millenia's senior statutory priority.

22. The two HURRICANE products have the exact same trademark: HURRICANE. The products have the same function. They are "multi-step" pedicure footbath kits, which allow an operator in a Pedicure Salon to use the kit to administer a footbath service to a client.

23. Pictures of the two products are provided below and attached as **Exhibits 6 and 7**.







**B. Millenia's Senior Rights in COLLAGENSPA® and Defendants' Infringing "ULTRA COLLAGEN" Line:**

24. In 2018, under its established house brand La Palm Spa Products, Millenia launched a highly successful multi-step bath treatment line under the trademark **COLLAGENSPA**. The COLLAGENSPA six-step treatment utilizes collagen, vitamins, and serums to provide sanitary, effective pedicure and manicure conditioning.

25. Millenia owns valid, subsisting registrations on the Principal Register of the USPTO for its flagship marks, including:

26. **COLLAGENSPA®** (U.S. Reg. No. 7,954,618, registered Sept. 23, 2025; and senior U.S. Reg. No. 5,759,575) for non-medicated pedicure and manicure preparations in Class 3, reflecting continuous use in commerce since July 2018 and acquired distinctiveness under Section 2(f) of the Trademark Act; and

27. Through extensive national marketing, trade show demonstrations, digital and social media campaigns, and consistent commercial sales since 2018, Millenia's COLLAGENSPA® mark and distinctive packaging have achieved widespread customer recognition, commercial success, and secondary meaning in the marketplace.

**C. Distinctive Common Law Trade Dress:**

28. In addition to its registered word marks, Millenia's COLLAGENSPA® product line features non-functional, inherently distinctive, source-identifying trade dress, including:

(a) A unique, stylized italicized script font utilized for varietal names (e.g., *Honey Pearl*);

(b) Specific graphic line placements, framing borders, and spatial layouts; and

(c) Original, custom background artwork tailored to each distinct product varietal.

29. Seeking to trade on Millenia's established brand equity without incurring the expense of independent product development, Defendants introduced a knock-off pedicure line under the designation **"ULTRA COLLAGEN."**

30. On information and belief, designed the packaging for "ULTRA COLLAGEN" to mimic Millenia's COLLAGENSPA® line, misappropriating Millenia's script typography and letter styles, graphic line arrangements, color palettes, and varietal background artwork (**Side-by-side product photographs attached as Exhibit 8, 9, 10, and 11**).












31. Defendants' PACKAGING constitutes a clear effort to improperly benefit from the look and feel of COLLAGENSPA, and its recognized position in the mark among salon owners and end-users. While genuine, salon-quality COLLAGENSPA® products sell at a wholesale price of approximately $4.50 per unit, Defendants offer their confusingly similar "ULTRA COLLAGEN" at $2.00 per unit. By pairing deceptive "look-alike" packaging with a drastically depressed price point, Defendants intentionally induce commercial distributors and salon buyers to swap genuine COLLAGENSPA® inventory for cheaper, counterfeit alternatives.

32. **Likelihood of Confusion:** Under the Tenth Circuit's established multi-factor framework (*King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084 (10th Cir. 1999)), Defendants' "ULTRA COLLAGEN" product line creates a high likelihood of commercial and consumer confusion:

(a) **Degree of Similarity:** Defendants pair the dominant term "COLLAGEN" with qualifying terms in an identical script font, layout, and visual scheme directly copying COLLAGENSPA®.

(b) **Intent of Defendants:** Defendants deliberately copied Millenia's trade dress to profit from its goodwill. After receiving a formal Cease-and-Desist demand on October 21, 2024 – and falsely assuring Millenia on November 5, 2024, that production had ceased – Defendants continued manufacturing and shipping "ULTRA COLLAGEN" inventory into commercial channels reaching Kansas through 2026.

(c) **Marketing Channels & Product Identity:** The goods are identical Class 3 pedicure kits moving through identical commercial distribution pipelines and sold side-by-side to salon professionals.

(d) **Degree of Purchaser Care:** Some salon technicians and owners – may purchase the Posh product believing either that (a) it is the Millenia product, or (b) that it has the same quality features as the Millenia product, or (c) that the end-user, the customer who is receiving the pedicure will not catch or have the sophistication to recognize that he or she is receiving a "substitute" product and not the genuine COLLAGENSPA product made by Millenia. Although Posh's ULTRA COLLAGEN packaging states that the product is MADE IN THE USA, it sells for a much lower price than Millenia's product. And, as further discussed below, on information and belief, Millenia alleges that this product is either not made in the United States, or if it is partly made in the United States, it is not made with U.S. ingredients. On information and belief, Defendants purchase bulk supply packets in high-volume wholesale environments. These products, that have names and uncanny superficial resemblance to Millenia's product and then sold through distribution networks until they reach the salon, where the end-user is not in a position to determine whether he or she is receiving a genuine La Palm Spa Products® using the COLLAGENSPA® kit. As a result,

end-user salon patrons receiving spa treatments are likely to be confused as to the source of the goods and the quality of the goods that are behind the services they are receiving.

(e) **Strength of Mark:** COLLAGENSPA® has earned a distinctive position and a secondary meaning in the pedicure kit market by which it is associated with La Palm Spa Products®, Millenia's cosmetic "trade name." That is why the U.S. Patent and Trademark Office allowed this mark on the Principal Register pursuant to 15 U.S.C. §1052(f) ("Section 2(f) of the Trademark Act) after COLLAGENSPA® provided evidence of multi-year commercial sales as evidence that COLLEGENSPA had established a secondary meaning pursuant to Section 2(f) of the Trademark Act.

33. Millenia distributes its products primarily through commercial beauty supply distributors, who in turn supply salons and pedicurists. Salon professionals and end-use consumers recognize and specifically request Millenia's products based on brand reputation, quality, and distinctive packaging. Those customers, the secondary layer that drives the demand for Millenia's products, are also being deceived.

**D. Defendants' Unlawful Foreign Importation and Deceptive "Made in USA" Origin Claims:**

34. In advertising, marketing, packaging, and promoting their commercial pedicure product lines—including the infringing "HURRICANE" and "ULTRA COLLAGEN" lines—Defendants explicitly represent to commercial purchasers, salon owners, and retail consumers that their products are manufactured domestically, stamping their commercial retail packaging with an unqualified "Made In U.S.A" designation (Photographic evidence of Defendants' "Made in U.S.A. packaging is attached as **Exhibit 12**).




35. Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and instructive Federal Trade Commission (FTC) regulatory standards (including 16 C.F.R. Part 323 and FTC enforcement policy), a marketer may not make an unqualified "Made in USA" or domestic origin claim unless all or virtually all of the product's components, processing, and final assembly are of United States origin.

36. On information and belief, Defendants' unqualified "Made In U.S.A" claims are literally false and materially deceptive. Official U.S. Customs and trade import records reveal that rather than manufacturing these products domestically, Defendant Posh Beauty Distributor LLC regularly imports complete, pre-packaged pedicure kits and essential component parts directly from foreign suppliers in China and Mexico.

37. Specifically, official U.S. Customs import records document that Defendant Posh Beauty Distributor LLC imported bulk shipments of the knock-off "HURRICANE" product line directly into the United States from foreign supplier Everlast Pedi Co. Ltd., including:

(a) March 5, 2026 Shipment (Bill of Lading No. MAEU263480708): Importation of bulk "HURRICANE CRYSTALS HURRICANE ACTIVATOR PEDICURE KIT"

inventory manufactured in and originating from Yantian, China, delivered to Houston, Texas; and

(b) July 22, 2026 Shipment (Bill of Lading No. MAEU270960898): Importation of bulk "HURRICANE CRYSTALS HURRICANE ACTIVATOR PEDICURE KIT" inventory manufactured in and originating from Lazaro Cardenas, Mexico, delivered to Houston, Texas (Customs Data Record attached as **Exhibit 13**).

Shipments available for POSH BEAUTY DISTRIBUTOR, refreshed daily

Customs US Trade Data Records

Shipments available for POSH BEAUTY DISTRIBUTOR. US import data refreshed daily and available back to 2008 with advanced search and filtering

| Date | Supplier | Buyer | Details | Origin | Destination | HS Codes | BOL |
|---|---|---|---|---|---|---|---|
| 2026-07-22 | EVERLAST PEDI CO LTD | POSH BEAUTY DISTRIBUTOR | HURRICANE CRYSTALS HURRICANE ACTIVATOR PED ICURE KIT 4 PET ROLL PLASTIC PRODUCT (USE O NLY FOR NAIL | 20107 Lazaro Cardenas, Mexico | 5301 Houston, Texas | Unavailable | MAEU270960898 |
| 2026-03-05 | EVERLAST PEDI CO LTD | POSH BEAUTY DISTRIBUTOR | HURRICANE CRYSTALS HURRICANE ACTIVATORPED ICURE KIT NAIL NIPPER INOX PRODUCT (USE F ORFAMILY) PLASTIC | 57078 Yantian, China | 5301 Houston, Texas | Unavailable | MAEU263480708 |

Shipment records indicate the products being imported and exported. Learn more

Suppliers available for POSH BEAUTY DISTRIBUTOR, refreshed daily

U.S. Customs Import Records

Suppliers available for POSH BEAUTY DISTRIBUTOR, refreshed daily

38. On information and belief, Defendants intentionally distribute these foreign-manufactured knock-off products into commercial distribution channels—including channels reaching retail entities in Wichita, Kansas—bearing deceptive domestic origin representations to induce commercial purchasers into believing they are buying domestically produced products.

39. Defendants' false "Made In USA" designations are material, tend to deceive commercial purchasers and salon technicians under instructive FTC guidance, and unlawfully siphon commercial sales from genuine domestic manufacturers located in Kansas, including Millenia.

40. Defendants committed these deceptive acts willfully, knowingly, and in bad faith, has continued to import either foreign-made "HURRICANE," or “HURRICANE” made with foreign ingredients from Mexico or China up to and including the present date despite actual notice of Millenia's senior rights and federal origin standards.

## IV. CLAIMS FOR RELIEF

### COUNT I
### Federal Trademark Infringement – "HURRICANE" Mark
*(15 U.S.C. § 1114 – Against the Posh Defendants)*

41. Millenia re-alleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. Millenia holds nationwide constructive priority in HURRICANE effective May 13, 2024, pursuant to 15 U.S.C. § 1057(c) and U.S. Reg. No. 8,393,481.

43. Defendants’ unauthorized use in commerce of the identical mark "HURRICANE" for identical pedicure bath preparation products creates direct consumer confusion, mistake, and deception under 15 U.S.C. § 1114.

44. Defendants’ copying and commercial substitution of Millenia's registered marks originated while Millenia’s application was pending on the publicly available through the U.S. Trademark Office’s “Trademark Center” and has continued up to and after Millenia’s registration of its HURRICANE mark on August 11, 2026. On information and belief, the Posh Defendants had hired experienced trademark counsel at least as early as December 11, 2025 but, nevertheless, the Posh Defendants continued their distribution and sale of, rendering Defendants' actions willful, bad-faith infringement.

45. As a direct and proximate result of Defendants' infringement, Millenia has sustained and will continue to sustain irreparable harm and severe monetary damage, entitling

Millenia to preliminary and permanent injunctive relief, recall and impoundment of infringing products, an accounting and disgorgement of Defendants' profits, actual and trebled damages, and an award of attorneys' fees pursuant to 15 U.S.C. §§ 1116, 1117, and 1118.

**COUNT II**
**Federal Trademark Infringement – COLLAGENSPA®**
*(15 .S.C. § 1114 / § 1125(a) – Against the Posh Defendants)*

46. Millenia re-alleges paragraphs 1 through45.

47. Millenia owns U.S. Reg. No. 7,954,618 for **COLLAGENSPA®**.

48. Applying the Tenth Circuit likelihood of confusion factors, Defendants' commercial distribution of "ULTRA COLLAGEN" creates a clear likelihood of confusion, mistake, and deception among salon professionals and retail purchasers under 15 U.S.C. § 1114 and § 1125(a).

49. Defendants' intentional copying and commercial substitution of Millenia's registered marks was executed with full knowledge of Millenia's registrations and continued after receiving formal written cease-and-desist notice, rendering Defendants' actions willful, bad-faith infringement.

50. As a direct and proximate result of Defendants' infringement, Millenia has sustained and will continue to sustain irreparable harm and severe monetary damage, entitling Millenia to preliminary and permanent injunctive relief, recall and impoundment of knock-off products, an accounting and disgorgement of Defendants' profits, actual and trebled damages, and an award of attorneys' fees pursuant to 15 U.S.C. §§ 1116, 1117, and 1118.

**COUNT III**
**Federal Unfair Competition & False Designation of Origin**
*(15 U.S.C. § 1125(a) – Against the Posh Defendants)*

51. Millenia re-alleges and incorporates by reference paragraphs 1 through 50, above, as though fully set forth herein.

52. Millenia owns inherently distinctive, non-functional common law trade dress in its COLLAGENSPA® product line, including its custom italicized script typography, framing borders, layout arrangements, and varietal background artwork.

53. Defendants' commercial distribution of "ULTRA COLLAGEN" and "Posh HURRICANE" constitutes trade dress infringement, false designation of origin, and passing off under 15 U.S.C. § 1125(a)(1)(A).

54. Defendants intentionally duplicated Millenia's distinctive packaging trade dress to deceive commercial purchasers, salon technicians, and retail consumers into believing Defendants' knock-off products originate from, are affiliated with, or are approved by Millenia.

55. As a direct and proximate result of Defendants' deceptive trade dress infringement and false designation of origin, Millenia has sustained and will continue to sustain irreparable harm and severe monetary damage, entitling it to injunctive relief restraining further trade dress misappropriation, impoundment of deceptive packaging, disgorgement of profits, actual and trebled damages, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1116 and 1117.

**COUNT IV** ***Federal False Advertising & Deceptive Domestic Origin Claims***
*(15 U.S.C. § 1125(a)(1)(B) – Against the Posh Defendants)*

56. Millenia re-alleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. Defendants have engaged in commercial false advertising and deceptive misrepresentation in violation of 15 U.S.C. § 1125(a)(1)(B) by stamping, packaging, promoting, and marketing foreign-sourced pedicure products with unqualified "Made In U.S.A" designations (**Exhibit 12**).

58. U.S. Customs import records confirm that Defendants regularly import complete, pre-packaged pedicure kits directly from foreign suppliers in China and Mexico (**Exhibit 13**), rendering Defendants' domestic origin claims literally false and materially deceptive under instructive FTC standards (16 C.F.R. Part 323).

59. Defendants' false "Made In U.S.A" representations deceive or have the clear capacity to deceive a substantial segment of commercial salon buyers and consumers, materially influence purchasing decisions, affect interstate commerce, and directly divert commercial sales away from genuine domestic manufacturers, including Millenia.

60. Defendants committed these acts willfully, knowingly, and in bad faith, entitling Millenia to nationwide injunctive relief under 15 U.S.C. § 1116, corrective notices, disgorgement of Defendants' ill-gotten profits, actual damages, treble damages, and attorneys' fees under 15 U.S.C. § 1117.

**COUNT V: Common Law Unfair Competition**
*(Kansas Common Law – Against All Defendants)*

61. Millenia re-alleges and incorporates by reference paragraphs 1 through 60 as though fully set forth herein.

62. Defendants' actions constitute unfair competition, trade dress misappropriation, and passing off under Kansas common law.

63. As a direct and proximate result of Defendants' willful common law unfair competition, Millenia has suffered substantial damage to its business reputation, sales, and goodwill in Kansas and nationwide, entitling Millenia to injunctive relief, compensatory damages, and punitive damages as allowed under Kansas law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Millenia respectfully requests that this Court enter judgment against Defendants as follows:

**A. Injunctive Relief**

1. Enter preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents, *servants, employees, distributors, and all persons acting in active concert or participation with them* from:

   (a) Manufacturing, promoting, marketing, selling, or distributing any footbath or beauty product bearing the marks HURRICANE, COLLAGENSPA®, HONEY PEARL®, or ULTRA COLLAGEN, or any mark, logo, or trade dress confusingly similar to Plaintiff's registered marks or distinctive packaging trade dress; and

   (b) Labeling, packaging, advertising, marketing, promoting, or distributing any product bearing unqualified "Made in USA" designations, domestic origin claims, or American symbolism where such products or their constituent components are manufactured, assembled, or sourced in substantial part outside the United States in violation of 15 U.S.C. § 1125(a)(1)(B).

2. Direct Defendants to recall and impound all infringing, knock-off, and deceptively labeled inventory, packaging, labels, digital assets, display media, and promotional materials pursuant to 15 U.S.C. § 1118.

3. Order Defendants to issue formal written corrective notices to all commercial beauty supply distributors, sales representatives, and salon purchasers regarding the foreign origin of their products and the infringement of Plaintiff's intellectual property.

**B. Monetary & Disgorgement Relief**

1. Award Plaintiff actual monetary damages sustained as a result of Defendants' *trademark infringement, trade dress infringement, false advertising, false designation of origin, and unfair competition* under 15 U.S.C. § 1117(a) *and Kansas common law*.
2. Order an accounting and disgorgement of all profits derived by Defendants from sales of *infringing, knock-off, or deceptively labeled* HURRICANE *and* ULTRA COLLAGEN products under 15 U.S.C. § 1117(a).
3. Treble all monetary damage awards pursuant to 15 U.S.C. § 1117(b) and § 1117(a) due to Defendants' willful, bad-faith infringement and intentional false origin representations following cease-and-desist notice.
4. Declare this an exceptional case under 15 U.S.C. § 1117(a) and award Plaintiff its reasonable attorney's fees, investigative costs, and costs of this action.
5. Award Plaintiff pre-judgment and post-judgment interest as allowed by law.
6. Award Millenia any such other and further relief this Court deems proper and just under the circumstances.
7.

**JURY DEMAND:** Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

KENNYHERTZ PERRY, LLC
/s/ Arthur Chaykin
Arthur Chaykin (Ks. Bar No. 42110)
Seth McCauley (Ks. Bar No. 30780)
2000 Shawnee Mission Parkway, Suite 210
Mission Woods, KS 66205
Phone: (816) 527-9447
Fax: (855) 844-2914
arthur@kennyhertzperry.com
seth.mccauley@kennyhertzperry.com

DATED this 8th day of September, 2026.

**ATTORNEYS FOR PLAINTIFF MILLENIA PRODUCTIONS, LLC**